you may begin. Thank you. May it please the court. I'm Charles Jacob for the appellants. Tammy Phelps and her corporation. Just a road map. I'm going to start with jurisdiction. I'm going to talk about this idea of a petition for instructions in a court order. And then if time allows getting on to the business judgment rule. With respect to jurisdiction, at the end of the Castillo case, the last sentence basically said because we've decided this case on the notion that quasi-judicial immunity applies, we need not address arguments about the trustee and whether they can be liable for negligence. Whatever the elements of a breach of fiduciary cause of action are, they're defeated by an affirmative defense of quasi-judicial immunity because it is. Do we have a case that says that for gross negligence or just negligence? Is there a case on gross negligence because that was one of the issues before the district court? I have not seen one that says the affirmative defense. What I've seen is the Clevenger case from the U.S. Supreme Court that says, it doesn't matter how negligent you are, no matter the degree of mistake, it's an absolute defense. So on that grounds, I see it as closing the case entirely. Is that a bankruptcy case, Clevenger? Clevenger, no, but it's based on judicial immunity and quasi-judicial immunity. So if there's absolute judicial immunity, my research previously has shown that as long as we're wearing robes, we're not liable. But that's not true for a trustee, right? So that's a quasi-judicial immunity, not absolute judicial immunity. I think it's quasi-judicial in the sense that they're not judges, but they perform functions that are supposedly like adjudicatory acts. And therefore, that's why we extend the immunity to them. But we don't have a case saying that a trustee has absolute judicial immunity. It says quasi-judicial immunity. Okay, so you're saying that Clevenger was about judicial immunity. Correct. I'm saying that it extends, the idea of an absolute defense I think is solid from the cases. But there's nothing that a bankruptcy trustee, a private trustee could do that would make it liable. So no matter what it does. If I understood you correctly, and maybe I'm getting it wrong, once the trustee is declared to be entitled to quasi-judicial immunity, that's the end of our case. That's what we're saying. And you can't think of a situation where a trustee would have liability. There is none. I don't see how a partial, even if they're grossly negligent, I don't see them being liable. I think that's a misinterpretation of what the Supreme Court has said about a judicial immunity. And I think what the appellate courts have said about an absolute immunity extended to bankruptcy trustees. But we know that a reporter, a court reporter doesn't have that. So obviously some functions are not protected. That's a separate category, I guess. Those actions that are administrative or misderialed, not adjudicative in nature. Is that true for a bankruptcy trustee also, or no? Bankruptcy, I think so, yes. Because the courts say that you have to focus on the specific function at issue. And when we look at the specific function here, I'm saying if you look back in history, this was always like an administrative type of act. The Charles Tabb document, which discusses the history of bankruptcy laws, as mentioned in the papers, explains that's what this is about, as opposed to some sort of adjudicatory act. So we would ignore Continental Coin, which says that case law of the Ninth Circuit, many other circuits, does not release a trustee from personal liability if her actions are a breach of duty of loyalty, such as self-dealing, or are due to gross negligence, or to deliberate or willful breach for duty of care. You would reject that? No, actually, what I've said, and I'll just move on to this next issue, is that we cited the McKinsey case from the Sixth Circuit as saying that we've cited what I've called a comfort rule order. In probate terms, they call it a petition for instructions. When a trustee has a difficult issue, they can protect themselves from liability by a certain type of motion to get judicial approval. And in McKinsey, it says that that still applies in the Sixth Circuit where there's a breach of fiduciary duty in a case, a BFD case, like a first party case, as here. And that was the thrust of our argument in the trial court and also in the district court, that this sort of order was never procured by the bankruptcy trustee. And the Bennett case says it must be satisfied for immunity to attach. And this lives on, and of course I found it in the rudder group practice guide, where else. And it's never been addressed, it's been just scuttled off to the side. And this is why we say that not only was the district court wrong not to reverse the trial court for failing to reverse it for not giving us a chance to amend at least. But also because she absolutely, the trustee absolutely cannot have judicial immunity because she not, she did not get that order as required by those cases, starting with- So what action should the bankruptcy trustee have taken in this case? What action should the trustee have sanitized by going to the district court and seeking an order? Well, initially she could have any time have moved for abandonment of properties that she wasn't preserving, and in terms of- And does the court have to approve that? Yes, because if you look at the statute in the Reed case, the statute is designed, and I don't know whether this is for all fiduciary duties, but for the duty to preserve and protect property of the estate. It says the decision maker is the judge, it is the judge. It's not the call of the- I thought, didn't we have at least one notice of intent to abandon property that was approved by the court? Later, and in fact, that was much later, and it was after we made, after we had complained reciprocally. And my fear is that this is a sort of abandonment motion prompted by the fact that if you look back at- But if we had one approved by the court, doesn't that satisfy the condition that you've urged us? That the damage has already been done, and the argument of the trustee is that what the Supreme Court seems to be called as Orwellian. She takes some language from the Catalano case, which says when the bankruptcy, when property is abandoned, the ownership interests of the original owner are returned, non-pro-tunk. And she tries to build that into a holding that once an abandonment occurs, everything that happened in history is forgotten. And I suggest that perhaps that is false, because in one instance, I'm sure that trustees sometimes invest money in preserving a property, and then they later decide to abandon it. And then they go back and probably claim administrative costs for having preserved that property. So my guess is that probably this argument is routinely disregarded by trustees. And in any event, Catalano doesn't stand for that proposition. And the Supreme Court would look at that after that recent case as being something that's an Orwellian argument. It's like taking a picture from the Soviet Union and airbrushing out Trotsky. You want to save some time for rebuttal? Yeah, well, I might as well go a minute here. Just to say that affirmative defenses have to be, to work and get rid of a cause of action on a motion to dismiss, there has to be no doubt about it. And there's plenty of doubts here all along. And the Bennett case says that you have to exercise the care of a reasonable person. And that means monitoring property. I'll reserve the 49 seconds. All right, thank you. We'll hear from the other side. Good morning, your honors. May it please the court. Lon McIntyre, appearing on behalf of the defendant Napoli, Amy Goldman, who is the bankruptcy trustee in this case. I think that the critical issue to focus on is well analyzed, thoughtfully and thoroughly analyzed in the Continental Coin case, which this court is familiar with. That case does establish that bankruptcy trustees may be held liable for gross negligence, but are subject to quasi-judicial immunity for ordinary or simple negligence. We're not bound by Continental Coin, this is a bankruptcy court action. Is there any Ninth Circuit or other circuit case saying that? Not that I have discovered, your honor. But I do think that because the bankruptcy court did such a thorough analysis that it is very persuasive authority for this proposition. What do you do with the Supreme Court's decision in Mosier that says that bankruptcy trustees are liable for breach of fiduciary duty? That the bankruptcy trustee is not liable? Are liable. Are liable? They don't have immunity for that kind of thing. I think that's an overly broad reading of Mosier. Mosier talked about potential liability being protected either, or being protected from liability either through a comfort order or alternatively suggested accountings that could be done on a regular basis that would avoid the liability of the trustee. But did not require a comfort order in order to provide protection on this quasi-judicial immunity basis. Well, following on on Mosier, our court in Bennett said that bankruptcy trustees are liable for intentional or negligent violations of duties imposed by law. What do we do with that? I think that, again, Bennett did not address specifically the exact issue that we have here. Bennett did not address the- Both of these cases that I'm citing to you deal with bankruptcy trustees specifically. So we're not dealing with other kinds of actors. And we can't glean from them principles that would apply generally? I don't think so. I think because they didn't, are not specific enough to what was involved in this case. In Bennett, the court talked about that trustees can do things like, should do something like get a comfort order or provide some other options to them to obtain absolute immunity. But I don't think it addressed head on this issue that we have in this case, which is that there should not be. And I think that Continental Coin is a very persuasive explanation of why there should not be liability for simple negligence. That quasi-judicial immunity should apply to acts of simple negligence, but not gross negligence. And in this context, what's the difference between simple negligence and gross negligence? Well, gross negligence has been defined as reckless disregard or willful intentional conduct. And that's cited by the district court in the city of Santa Barbara case in California. But also that standard is described in a number of federal cases. So the appellant here has pled gross negligence. They use the term gross negligence in their complaint. Is that sufficient to get them over the hump? I don't believe so, because I don't think that's a pleading of the underlying facts that constitute gross negligence. That the allegations of the complaint are very conclusory in saying, with gross negligence, the bankruptcy trustee did X, Y, and Z. So what is it you would like this court to hold? I would like this court to hold that a bankruptcy trustee is not liable for negligence, ordinary negligence. And that in this particular case, the plaintiff has not adequately alleged gross negligence to survive a motion to dismiss. It's a pleading case at this point. So you want to do this on an Iqbal Twombly? Yes, yes, I think that's accurate. I mean, there do have to be specific facts that underline the allegations. You can see that they have used the words gross negligence, that you just want us to say the facts don't support it, even if they could be proved. I do agree, they do use the word gross negligence. And so does quasi-judicial immunity enter in here? Does it have any role to play here? Yes, because without adequate pleading of gross negligence, the facts constituting gross negligence, this complaint cannot move forward. I have to say, I'm really, really puzzled. First of all, I think our cases are kind of all over the map. Sometimes you said negligence is sufficient, sometimes you said gross negligence is sufficient. Sometimes you said you've got quasi-judicial immunity and it's a historical, functional test, and other times we've got these four factor tests. So I'm scratching my head trying to figure out what's going on here. If the trustee, if we've alleged, I'm sorry, if we've got quasi-judicial immunity, that's quasi-judicial. That means that she's a quasi-judicial officer entitled to judicial immunity, which is absolute immunity. And in the context of like Stump versus Sparkman, a case which does deal flat out with judicial immunity, the court said it doesn't matter what they do. It can be malicious and the judge is protected. So, but this doesn't extend that far? So it doesn't really mean it's not really quasi-judicial immunity? No, I think it doesn't extend as far as absolute immunity, but I believe that it does apply to, that quasi-judicial immunity can apply to the actions of a bankruptcy trustee who's undertaking the functions of a, deciding in an authoritative manner, the private rights to this estate. So they, I'm sorry. So some of the cases dealt with things like noticing a hearing. Yes. And noticing a hearing is something that courts do. We do this, we do this quite routinely. And that seems to make sense then that somebody would be entitled to quasi-judicial there and acting in a quasi-judicial role by giving notice to a hearing. If they give negligent notice or even grossly negligent notice, that seems like that's sort of quasi-judicial. The management of property doesn't strike me as a judicial function. And that's what they're complaining about here is the mismanagement of property. And the trustee then steps into a fiduciary role, which is different from a judicial role, and therefore may be subject to the ordinary rules to which fiduciaries are subject. That would be negligence, gross negligence, and so on. I just don't understand how to reconcile all of the things we've said. I understand. It's a difficult question. I agree. But I do think in terms of the function issue, which was discussed in Antwon in the U.S. Supreme Court starting in Antwon, which decided that court reporters did not really have judicial functions. You look at the function, not the title. But here in Castillo, the case I believe you were referencing, Your Honor, about scheduling a hearing at a confirmation hearing and not giving adequate notice, the court said that that was conduct undertaken by a bankruptcy trustee. And the court found that that was a function integral to the authoritative adjudication of private rights to the bank. And that would make sense to me. And if we were talking about negligence or even gross negligence in the scheduling of a hearing, this would make sense to me. That's not their complaint. Their complaint is, you mismanaged the property. That's not what courts do. I'm not sure why somebody should be entitled to quasi-judicial immunity in the mismanagement of property. Well, I think the claim is, I think what the distinction here is that whatever the bankruptcy trustee is doing in exercising their broad business judgment, they're evaluating things that on behalf of the court, and that's the whole trustee system, is to provide officers to the court who can undertake some of these things so that they don't have to. But she's adjudicating and evaluating whether the cost and expense of managing this property or improving property or collecting property is outweighed by the cost of doing that after administration costs, et cetera. And that ultimately results in the act of filing, as she did here, a request, a report of no distribution. If the trustee had not been appointed, how would those functions have been carried out? My understanding is back many, many, many years ago, a judge would have to do it. And that's why the trustee system was created to provide that service or, you know, that work. So you understand the trustee to be like a special magistrate or something like that? Well, certainly an agent of the court. Because trustee, as Judge Bybee points out, sounds more like someone who has a fiduciary duty to the estate. Why isn't that the case? Well, I do think they have a fiduciary duty not to engage in gross negligence. But I think striking that balance and saying, acknowledging that trustees have very complicated and complex decisions to make and need some protection from their ordinary decisions that they're making as part of that judicial, quasi-judicial function, striking the balance of providing them with protection from negligence claims, but also protects the creditors and other third parties that are interested in the estate from acts of gross negligence. And I think it's really an appropriate balance that has been struck. So if we went to sort of a pre-trustee theory of a case in which a bankruptcy court was responsible for managing and deciding how to dispose of assets, would a bankruptcy judge have a fiduciary duty that could be violated and for which the judge could be sued? Or is the judge covered by judicial immunity? I think that the judge would be covered by judicial immunity. And I think that's why quasi-judicial immunity applies to the conduct of the trustee. But we seem to have an exception for gross negligence, which the judge would not be subject to. So the trustee is subject to something the judge is not subject to. I'm not sure how then the theory of quasi-judicial, the quasi doesn't attach to immunity. It's not quasi-immunity. It's quasi-judicial. That is, I'm a quasi-judicial officer by being a trustee. I stand in the shoes of the bankruptcy judge. The judge has appointed me to do things that the bankruptcy judge doesn't wish to do. And so I should get, I would think, quasi-judicial immunity, which would mean, I think, absolute immunity, including immunity from even gross negligence. That's why I don't understand our cases. I'm sorry, this is a frustration with our cases, not with you. But I don't know what to do with this because I don't know how the negligence, gross negligence thing fits into this at all. Unless we're talking about somebody, a trustee who's acting outside of their authority. And that's the exception to Stump versus Sparkman. Right. Right. Okay. Over time, do you have a question? I have one question. So if we assume that immunity applies, I have a question about the test that we should apply to that. So with that premise, we had the Bennett case originally, which we had the four-factor test. And then the Supreme Court decided Antoine and said, no, this is a common law functionality test. And then our first case after that was Harris, which did that analysis, just a historical functionality analysis, which seemed to displace Bennett. And then after Harris, it's all a mess and we're going back and forth between Bennett and Harris. So what, in your view, is the right test for us to apply? I think the correct test is the test in Harris. But I think that because I have, it take issue with the Bennett, the four-factor test in Bennett, which requires a prior court order in order to qualify for immunity. So I think there can be a combination of those two tests that would apply here and perhaps. Do you think that they can be reconciled, that you can combine the two? They're not inconsistent with each other? I think so. Yeah. Thank you. Well, if I could just ask. So tell me, were the trustees' actions approved here by the bankruptcy court or weren't they? They, ultimately, the trustees decided to abandon the properties and they were approved by, that was approved by the court. Okay. And we have, we had a first RND and a second RND? Correct. And the first one was in what year? 2011. So we have a 2011 RND, that feels like ancient history. And then the second one was approved in? 2021. Okay. Sometime in 2021. That accords with my recollection. Thank you. Thank you.  Thank you. You have a few seconds for rebuttal. Thank you. The second RND was actually withdrawn, I believe. And the abandonment motion took place on July 20, was granted on July 27, 2021. But the point I've made in some request for judicial notices, or said elsewhere, is that the abandonment motion was wrongly decided. We're not collaterally attacking. I'm just saying that the problem is that you took it as a premise to drop in value because the property had depreciated. So it was going to be an easy outcome from an abandonment perspective. And that's what we're complaining about. Okay, so help me understand, if the trustee has filed an RND, and whether or not the property's been at least negligently mismanaged, if the trustee steps into the shoes of the bankruptcy judge, then why isn't she entitled to quasi-judicial immunity? The judge would be entitled to immunity, right? If the judge were managing this and mismanaged the property. We're not making a decision about... We're talking about an administration issue that caused the damage to the house. We haven't argued about the fact that ultimately it permitted abandonment. They ultimately permitted abandonment, though, as you can tell, because the value of the house was so damaged that there was less money available that could be used for purposes of... The negligence that you're alleging occurs long before the decision to abandon it. And that's not even... It's a possible exception of rents, the separate issue, because those are property of the estate, and the trustee has never gone after those to collect those. But if we didn't have a trustee, and the bankruptcy court was trying to manage this on its own, and the bankruptcy court mismanaged the property, the bankruptcy judge would not be liable. Is that correct? Yeah, but the problem, I think, is that that's not what judges do. There's a distinction between administrative processes and a judicor. Assuming that no trustee was appointed, who would be managing the estate? Is that the debtor in possession, or is it the court? It might be the U.S. trustee. I don't know. But if we're talking about ancient history, I can't really shed lights on it. I think that the idea is that in modern times, we have a bankruptcy code that appoints trustees to do the administrative functions. And the courts have said again and again, trustee actually has different functions, and some of them are administrative, and some of them are judicial or quasi-judicial. So one last question. Judge, Bobby suggests that we understand the term quasi-judicial immunity to mean quasi-judicial, and then the word immunity is separate. Why is it quasi-judicial immunity as a single entity, as a single word, so that the judicial immunity is qualified the way we have qualified immunity? I'm not following you. I know that what we call judicial immunity is absolute. But with the trustee, it doesn't have that sort of absolute, at least according to our case law. So it would be quasi-absolute immunity, which would be not absolute. I'm not sure that our case law says that. It doesn't really address that either way. I don't think, I think there's conflate. If you are suggesting that it's not absolute because it can be held liable for gross negligence, that's not the law of the Ninth Circuit as I understand it. From the Cochise case and Collier's and other authorities say, no, Ninth Circuit is one of these circuits that says simple negligence is the standard. And I've asserted that that's consistent with what the Supreme Court has said, like in that Apache case, a preservation of property is, in the traditional common law of trust, you can be liable for negligence. And then in this bankruptcy context, I cited a case called Willoughby, which said, albeit from 1938, it talks about the same thing. It uses the ordinary negligence standard. And, excuse me, you have a case called Leite, L-E-I-T-E, which says we don't, you know, if Congress has not done anything with the case, with the standard for a long time, I think we show respect for it. Okay, you're way over time. Does anyone have any follow-up questions? No, thank you. Thank you very much. We have your argument. The case of Phillips v. Goldman is submitted.
judges: BYBEE, IKUTA, FORREST